In the Matter of CAMILLE C. PIERNE, Appellant, against LEWIS J. VALENTINE, as Police Commissioner of the City of New York, et al., Respondents.

In the Matter of TERENCE J. HARVEY, Appellant, against LEWIS J. VALENTINE, as Police Commissioner of the City of New York, et al., Respondents.

In the Matter of THOMAS F. KEEVAN, Appellant, against LEWIS J. VALENTINE, as Police Commissioner of the City of New York, et al., Respondents.

Second Department, May 3, 1943.

*Sydney Rosenthal* and *Benjamin J. Jacobson* for appellants.

*Thomas D. Thacher, Corporation Counsel (Paxton Blair* and *Raymond J. Horowitz* of counsel), for respondents.

JOHNSTON, J.   The principal question presented involves the construction of several sections of the Administrative Code of the City of New York governing the retirement of members

of the Police Department and their right to a pension. Appellants were members of the police force and contributors to the Police Pension Fund.

The pertinent statutes, so far as material, are as follows: " § B18–4.0 * * * [subd.] c. Any member [of the Department] who: ' (1) Shall have elected to contribute on the basis of retirement after twenty years of service and who has or shall have performed service in the force for at least twenty years, or (2) Shall have elected to contribute on the basis of retirement after twenty-five years of service and who has or shall have performed service in the force for at least twenty-five years, upon his own application in writing shall be retired * * *, and placed on the roll of the pension fund, and * * * be paid from such fund, an annual pension during his lifetime, of not less than one-half his full salary at the date of his retirement * * *.' "

" § B18–4.0 * * * [subd.] a. The board of trustees shall retire any member who, upon an examination, as provided in subdivision d * * *, may be found to be disqualified, physically or mentally, for the performance of his duties. Such member * * * shall receive * * * an annual pension as provided in this section. In every case such board shall determine the circumstances thereof, * * *.' "

" § B18–4.0 * * * [subd.] d. All medical examinations required by or made pursuant to the provisions of this article shall be conducted by a medical board appointed by the commissioner, * * *.' "

The facts are undisputed and may be summarized as follows: On March 16, 1942, Pierne, then an inspector with over thirty-six years of continuous service, filed an application for retirement, to take effect at midnight, March 16, 1942. On March 24, 1942, Harvey, then a lieutenant with over twenty-eight years of continuous service, likewise filed an application for retirement, to take effect at midnight, March 25, 1942. On March 2, 1942, Keevan, a patrolman, who lacked two months of the required twenty years to make him eligible for retirement by reason of length of service, made application to be retired because of physical disability. More specifically, he applied for a medical examination by the medical board to determine his fitness for police duties. Such examination was had and it is admitted that on March 10, 1942, Keevan was served with a notice by the chief surgeon that he was physically incapacitated to perform full police duties and his retirement, because of

such disability, was recommended to the Commissioner as chairman of the Board of Trustees of the Pension Fund.

At the time appellants filed their applications no charges were pending against them. More than thirty days after appellants filed their applications they were served with specifications charging them with derelictions of duty, which, if established, might subject them to dismissal. They also were notified of the date when a public hearing of the charges would be had. Respondents allege that the charges were made after the Kings County grand jury filed a presentment accusing appellants of official misconduct.

Appellants then instituted separate proceedings (since consolidated), under article 78 of the Civil Practice Act, for orders of prohibition restraining respondents from proceeding with the departmental trials. Appellants contend the statutes are self-executing and, as to Pierne and Harvey, their retirement was automatically effectuated upon the filing of their applications; and likewise as to Keevan, upon the issuance of the police surgeon's certificate. Respondents, on the contrary, assert that the statutes are not self-executing and retirement is not effectuated except by resolution of the Board of Trustees of the Pension Fund which, in each instance, failed of adoption. Respondents also urge, as they did below, that prohibition is not appellants' proper remedy. The learned Special Term held it was, but dismissed the petitions.

The first question to determine is whether prohibition is the appropriate remedy. I believe it is. Prohibition is an extraordinary remedy to prevent an inferior court or tribunal or a public official or board acting in a judicial or quasi-judicial capacity from taking cognizance of matters not within their jurisdiction and from exceeding their jurisdiction. (10 Carmody's New York Practice, § 798; *People ex rel. Jones* v. *Sherman*, 66 App. Div. 231, 234, and cases cited.) "It is an extraordinary remedy, ordinarily used to prevent a subordinate tribunal from exercising *ultra vires* jurisdiction." (*Matter of Almroth* v. *Boland,* 258 App. Div. 378, 379.) In short, prohibition is a preventive and not a remedial process, to be invoked when one has no jurisdiction or, having jurisdiction, assumes to exercise an unauthorized power. (*People ex rel. Lemon* v. *Supreme Court,* 245 N. Y. 24; *People ex rel. Safford* v. *Surrogate's Court,* 229 N. Y. 495; *People ex rel. Jerome* v. *General Sessions,* 185 N. Y. 504, and *Quimbo Appo* v. *People,* 20 N. Y. 531.)

Respondents contend that mandamus rather than prohibition is the proper remedy to compel retirement and the payment of a pension. That is true, but appellants are not seeking such relief, although the question of whether they are in fact retired and entitled to pensions is involved. The primary question to be decided is whether the Police Commissioner has been divested of jurisdiction to try appellants upon the charges filed subsequent to their applications for retirement. Under the circumstances, prohibition is the appropriate, in fact the only, remedy that would adequately protect appellants' rights, provided they are entitled to relief.

Pierne and Harvey having applied for retirement on the basis of length of service, their rights, concededly, are governed by section B18–4.0, subdivision c, of the Administrative Code. Appellants claim this statute is self-executing in the sense that when it appears that the applicant has served the required number of years, his retirement is accomplished by the filing of his application, and action upon the part of the Board of Trustees, which administers the pension fund, is unnecessary. No case is cited, and independent research has disclosed none, where this statute has been considered. The statute is, however, similar in intent and language to section 355 of the Greater New York Charter, which it replaced and which, so far as pertinent, provided: " * * * ; and any member of the police force who has, or shall have performed duty on any such force aforesaid, for a period of twenty-five years or upwards, ' * * * upon his own application in writing, provided there are no charges against him pending, *must* be relieved and dismissed from said force and service by the department and placed on the roll of the police pension fund and awarded and granted, to be paid from said pension fund, an annual pension during his lifetime of the sum not less than one-half of the full salary or compensation of such member so retired; * * *." (Underscoring mine.)

It has been held that this Charter provision was self-executing and that the written application alone accomplished the purpose and effectuated the retirement. Thus, in *People ex rel. Fitzpatrick* v. *Greene* (181 N. Y. 308, 310), it is stated: " It will be seen, also, that this statute executes itself, in the sense that when the necessary facts exist the retirement is accomplished by the policeman's application in writing. In other words, when the necessary conditions actually exist the retirement is accomplished by the policeman's application, without any action upon the part of any other body." In *Mullarkey* v.

*Valentine* (245 App. Div. 837) this court also held the Charter provision self-executing.

It is true that the Charter (§ 355, *supra*) provided that a policeman " upon his own application in writing, \* \* \* *must* be " retired, while the Administrative Code (§ B18–4.0, subd. c) provides that he " upon his own application in writing *shall* be retired \* \* \*." (Underscoring mine.) But from the context it appears that the word " shall " in the present statute is equally as mandatory as the word " must " in the Charter and consequently should be given the same effect. This view is fortified by many adjudications interpreting the statutes governing the retirement rights of New York City and State teachers.

Section B20–41.0 of the Administrative Code (formerly Greater New York Charter, § 1092, subd. K; L. 1901, ch. 466) sets forth the retirement rights of teachers who are contributors to the Teachers' Retirement Fund. It provides, *inter alia,* that upon written application to the Retirement Board, " Such application shall retire such contributor \* \* \*." It was held that this provision is self-executing and that the application itself retired the teacher. (*Matter of Creveling* v. *Teachers' Ret. Board,* 255 N. Y. 364, 368.) See, also, *Rees* v. *Teachers' Retirement Board* (247 N. Y. 372) and *Matter of Rogalin* v. *New York City Teachers' Retirement Board* (265 App. Div. 801, affd. 290 N. Y. 664.)

Section 1109 [subd. (1), par. (a)] of the Education Law provides that a teacher who is a member of the Teachers' Retirement Fund and has completed the required number of years of service " shall be retired if he files with the retirement board a statement \* \* \* setting forth at what time \* \* \* he desires such retirement." In construing this statute the courts have held that it is self-executing and the teacher's rights to retirement and the fruits of retirement, granted that service is sufficient, are absolute. (*Matter of Fitzpatrick* v. *New York State T. R. Board,* 212 App. Div. 760, 762, affd. 241 N. Y. 515; *Hunn* v. *New York State Teachers' Retirement System,* 264 App. Div. 188, reversed on other grounds, 289 N. Y. 171.)

Respondents, in an effort to sustain their claim that it is not the filing of the application but the resolution of the Board of Trustees which effectuates the retirement, urge that the section under consideration is qualified by and should be construed in the light of section B18–2.0, subdivision b, of the Administrative Code. The latter section reads as follows: " Every act

of the board of trustees shall be by resolution which shall be adopted only by a vote of at least seven-twelfths of the whole number of votes authorized to be cast by all of the members of such board."

Respondents' contention is without merit. Section B18–4.0, subdivision c, with which we are presently concerned, is complete and unambiguous and does not require resort to any other provision of the statute for clarification. Section B18–2.0, subdivision b, was not intended to limit or qualify section B18–4.0, subdivision c, but was included only because the pension fund was to be administered by the Board of Trustees instead of by the Police Commissioner alone, as was the situation theretofore, and some provision had to be made as to how the Board was to act legally on matters on which it was required to act. Furthermore, in view of the many decisions construing the prior statute (Greater New York Charter, § 355) as self-executing, if the Legislature intended to effect so radical a change and make retirement dependent upon a resolution of the Board of Trustees, it would have employed other, different and plainer language. It is not without significance that the Legislature so provided with reference to the retirement rights of other city employees. Thus section G41–57.0 of the Administrative Code (formerly Greater New York Charter, § 1323a), which governs the retirement rights of the employees of the Department of Health who are members of the Health Department Pension Fund, provides that an employee " upon his own application in writing, * * * shall be retired from active service *by resolution of the board of estimate* and placed upon the health department pension roll." (Underscoring mine.) This statute is identical with the former Charter provision (§ 1323a), except that it requires a resolution of the Board of Estimate instead of a resolution of the Board of Health.

Respondents rely on *Matter of McMeekan* v. *Dept. of Health, N. Y. City* (157 Misc. 620, affd. 249 App. Div. 609, affd. 274 N. Y. 521); *People ex rel. Brady* v. *Martin* (145 N. Y. 253) and *People ex rel. Tuck* v. *French* (108 N. Y. 105). In the first case the Charter provided that an employee of the New York City Health Department " shall be retired * * * by resolution of the board of health * * *, and placed upon the health department pension roll." In the other two cases the statute provided that an employee of the New York City Police Department " shall, by resolution, adopted by a majority vote of the full board, be relieved and dismissed from said

force and service and placed on the roll of the police pension fund, * * *." In the three cases the statutes involved negatived an automatic retirement and vested a discretion in the members of a board; perhaps not an unlimited and unreviewable discretion but, as Judge Peckham described it, " a judicial one, to be exercised reasonably and fairly." (*People ex rel. Brady* v. *Martin, supra.*) Hence, the three cases cited have no application to the instant case. (See *People ex rel. Fitzpatrick* v. *Greene, supra.*)

Therefore, the statute is self-executing and the retirement of Pierne and Harvey was effectuated by the filing of their applications, and action upon the part of the Board of Trustees was unnecessary.

As previously indicated, Keevan sought retirement on the ground of physical disability. (§ B18–4.0, subd. a.) In my opinion the provision: " The board of trustees *shall* retire any member who, upon an examination, * * * may be found to be disqualified * * * for the performance of his duties," is self-executing and the Board must retire the policeman upon the certificate of the Medical Board. (Underscoring mine.) In other words, if retirement is for disability the Board has no discretion under the express mandate of the statute. As heretofore stated, it is admitted that the Medical Board, after examination, found Keevan physically incapacitated to perform full police duty and recommended his retirement.

In *Matter of Hickie* v. *Valentine* (177 Misc. 743, affd. 262 App. Div. 832) the court, in construing this identical section, stated: " Concededly the board of trustees *must* accept the decision of the special medical board as to the nature and extent of the disability." (Underscoring mine.)

It is true, as respondents point out, that the section also provides that " In every case such board shall determine the circumstances thereof, * * *." But, as pointed out in the *Hickie case* (*supra*), this duty or discretion has nothing to do with the determination of disability, which is for the Medical Board alone, but is limited to determining whether the disability was incurred in the performance of duty. As stated in the case just cited: " Under the present police pension system the medical board and the special medical board are empowered to determine the fact of disability, while the board of trustees is required to determine the ' circumstances ' thereof."

Since Keevan made no claim that his disability was incurred in the performance of duty, his retirement was effectuated by

the issuance of the certificate of the Medical Board, and action upon the part of the Board of Trustees was unnecessary.

Respondents further contend, assuming the statutes are self-executing, that appellants' attempt to retire was futile because charges were then pending against them. Respondents admit no formal charges had been made prior to the filing of Pierne's and Harvey's applications, and, as to Keevan, prior to the decision of the Medical Board. Respondents, however, insist that within the meaning of the statute charges were pending against appellants because prior to their applications they had appeared before the grand jury which was investigating their official misconduct. If we were considering the old statute (Greater New York Charter, § 355) — which expressly provided as a condition for retirement that no charges be pending — there might, although I doubt it, be some basis for respondents' contention. But the present statutes contain no such provision. In *Matter of Rogalin* v. *New York City Teachers' Retirement Board* (*supra*), in which the teachers' retirement statute (Administrative Code of the City of New York, § B20–41.0; L. 1937, ch. 929) was involved, the same argument was advanced. Like the statutes in the instant case, it made no mention of the effect of pending charges. On March 25, 1942, serious charges were preferred against Rogalin and he was suspended on that date. The following day he filed a written application for retirement, specifying March 27, 1942, as the effective date. The court held that the pendency of the charges did not affect Rogalin's right to retirement; that the application itself retired him and action by the Retirement Board was unnecessary.

It is suggested that a policeman, otherwise eligible to retire on a pension, as a matter of public policy should not be permitted to do so if charges have been or are about to be made against him. But in this instance that is a matter for the Legislature. The function of courts is to declare the law as it is. We are dealing with the interpretation of a statute, the wisdom or unwisdom of which is for the Legislature.

The orders should be reversed on the law, with one bill of fifty dollars costs and disbursements, and the respective applications should be granted, without costs.

TAYLOR, J. (dissenting). I dissent and vote to affirm on the sole ground that as matter of law the relevant statutes (Administrative Code of the City of New York, § B18–4.0, subds. a, b and c) are not self-executing when they are considered in the

light of and harmonized with section B18–2.0, subdivision b, section B18–4.0, subdivision g, and other provisions of the same Code which have bearing. It is elementary that in construction all portions of an act must be considered together and that even though a statute be divided into many sections, each one must be construed in the light of the other sections and kept subservient to the general intent of the whole enactment. (*Ansonia B. & C. Co.* v. *New Lamp-Chimney Co.,* 53 N. Y. 123, 125; *People ex rel. Mason* v. *McClave,* 99 N. Y. 83, 89.) If such construction is had, the lawful retirement of none of the appellants will become an accomplished fact until and unless the appropriate resolution of the Board of Trustees (§ B18–2.0, subd. b) shall have been adopted. It seems to me that impressive considerations of public policy dictate that the construction of my learned colleagues should not be adopted; for the majority ruling is, in effect, that under the present statutes it is immaterial whether charges were pending against appellants at the time Pierne and Harvey filed their applications for retirement and the chief surgeon issued his certificate of disability on Keevan's application for retirement. Such ruling loses sight of other statutory provisions which should be construed with those under which appellants claim in determining when the right to retirement and right to a pension accrue. The error in the ruling, in my opinion, is as to each of the three appellants. It is particularly manifest in regard to Keevan, as to whom power to grant, award or pay a pension on account of physical or mental disability or disease, upon prescribed certificate, is expressly resident in the Board of Trustees. (Administrative Code of the City of New York, § B18–4.0, subd. e.) My view is that the power is also resident in the same Board in the cases of the other two appellants. The charges of dereliction against each appellant were at least inchoate at the time of his application for retirement. In my opinion, the authorities cited by my colleagues, properly read, do not conflict with my views as above expressed.

The expression " shall be retired " in the present statute (Administrative Code of the City of New York, § B18–4.0, subd. c) is not conclusively mandatory as is the provision " must be relieved and dismissed " which characterizes Charter section 355, construed in *People ex rel. Fitzpatrick* v. *Greene* (181 N. Y. 308) and in *Mullarkey* v. *Valentine* (245 App. Div. 837); and *Matter of Rogalin* v. *New York City Teachers' Retirement Board* (265 App. Div. 801, affd. 290 N. Y. 664) does not aid

the appellants herein, for the statute there involved (Administrative Code of the City of New York, § B20–41.0) provides with finality, which is without counterpart in the statutes here pertinent, that " *Such application* shall retire such contributor * * *." (Italics mine.)

CLOSE, P. J., HAGARTY and CARSWELL, JJ., concur with JOHNSTON, J.; TAYLOR, J., dissents and votes to affirm, with opinion.

Orders reversed on the law, with one bill of fifty dollars costs and disbursements, and the respective applications granted, without costs.